Good morning. May it please the court, my name is Jerusalem Beligan and I'd like to reserve three minutes for rebuttal. My firm represents the plaintiffs Marlyn Sali and Deborah Spriggs and we request this court to reverse the district court's order denying certification of the rounding time, wait statement, regular rate and waiting time classes. This court should reverse the district court's order because it committed, it abuses discretion in multiple ways. Regarding the rounding time class, the district court improperly reached the merits of plaintiff's claim and improperly applied well settled California law on what the district court again misinterpreted California law and therefore committed a per se abuse of discretion. Regarding the regular rate and waiting time class, the district court improperly refused to consider evidence clearly before it which would have established the typicality and adequacy requirements. First, I will address the district court's ruling on the rounding time class. With respect to the rounding time class, the district, there are two alternative bases to reverse the district court's ruling. First, the district court reached the plaintiff's, the merits of plaintiff's rounding time claim when it hours work and therefore compensable. In addition, secondly, the court wrongly concluded that plaintiffs must actually prove that they were actually working during the rounded time in order for it to be compensable under California law. Let me ask you a question on this rounding time. So is it your position that it's a clock is considered time under the control of the employer? No, your honor. It's a factual question. Well, if it's a factual question, then how is it that some people show up and they don't actually have to work, but they might just be hanging around the break room or chatting and other people might be working. So that then, if it's purely factual, it seems like every employee has a different setup, which would counsel against the basically having an underlying class or subclass that had the same facts. So maybe you can explain that to me. Yes, your honor. In Alcantara, actually, the defendants in that case moved for a summary judgment on the commute time claim. And the court in that case concluded that it would ask too much for the plaintiffs at the class certification stage to establish whether or not the employees were sufficiently under the control of the employer when that is a question of fact for the jury to decide. But the question of whether they were actually working is, to me, that's legally defined in the statute. That is, it's under the control of the employer. And that's something that it seemed that this district court got incorrect. He thought that actually working meant you're going to have to ask each . . . The reason he found that individual issues predominated was because he thought you were going to have to punched in, you were actually working, when really it's whether you're, once you punch in, are you under the control of the employer. And that's a legal question. Correct, your honor. That's why I misunderstood. That's why I asked you straight out. Maybe Judge Ward will articulate it better. And that was, if that's really a legal question, when are you under control, then that would seem to be an issue that would predominate for everyone. But now I'm somewhat confused because you're telling me it's a factual issue. And I think what I was confused was the rationale behind the underlying court's ruling was that in order for . . . And I guess we should take a step back because one of the reasons why the district court's ruling is incorrect legally is because it's underlying premise. It's underlying premise was that in order for work to be compensable, they have to be actually working, which is not the rule of law in California. Under California law, under Morley on, the California Supreme Court said, held that there are two events that trigger, two events that convert time into compensable time. That's when the employee is under the control or the employee is permitted or suffered or permitted to work regardless of whether or not to do so. In neither, in neither the court's ruling, the Supreme Court's ruling in Morley on, did the court say they have to be actually working? In fact, in Morley on . . . But then the question, just to be clear, is that whether they're under the control is a legal question, correct? Yes. Okay. Yes. As this court . . . And, Your Honor, I want to focus back on the rounding time claim and the reason why the district court reached, and probably reached, the merits of plaintiff's claim. As this court held in Alcantar, which is a whether the time spent during the rounding time constitutes hours worked and therefore compensable, is a merits question. As this court stated in Alcantar, it would ask too much of plaintiffs at the class certification stage to establish whether or not the employees were actually under their employer's control when the goal of class certification is merely to establish whether plaintiffs, or to ask the question whether plaintiffs have presented a common question capable of class-wide resolution. And in this case, the plaintiffs have. Counsel, I want to switch the subject on something that the district court looked at, and that is on this whole notion of what kind of evidence district courts can consider at this class cert stage. And that is whether or not district courts can consider only admissible evidence, or whether they can consider non-admissible evidence. So what's your position on that point? Yes, Your Honor. And that goes to the regular rate of pay and waiting time classes, which the court declined certification on the grounds that plaintiffs did not produce admissible evidence on typicality. And, Your Honor. But is it required to produce admissible evidence? Is there some case that you could cite to the court that indicates that it would, that this circuit requires admissible evidence? Your Honor, I can't cite specific Ninth Circuit court evidence, a case, but I did cite in the brief, Paxton, which is the Eighth Circuit Court of Appeal, saying that hearsay testimony may be admitted to establish typicality. And in addition, Your Honor. Well, the Ninth, the Eighth Circuit also has, I believe, is it Sir Plex Plumbing? And in that case, the Eighth Circuit said, look, what we're dealing with here as district court judges are dealing early in the discovery process. They don't have all the information. They don't have everything that they would need to make that full, rigorous analysis requirement of admissible evidence at that stage of the proceeding. So, I mean, I think you find a case law in the Eighth Circuit itself that's contrary to that argument, don't you? No, Your Honor. I did not cite that case. I cited Paxton, which stands for the proposition that hearsay testimony may be admissible to establish typicality. And in addition to Paxton, I cited Ninth Circuit court precedents, specifically Blackie versus Barack, in which this circuit held that allegations in the complaint alone are sufficient to satisfy the requirements of Rule 23. And if not, the district court can request from the parties additional information from which the parties can give to the court to make an informed decision on whether the rules requirements have been satisfied. We have a recent case. We have a recent case out called Hyundai, which is a new big class action case. And in that case, it talks about the lead plaintiff having to demonstrate that you meet Rule 23 through evidentiary proof. So I suppose there's some ambiguity as to whether evidentiary proof means what you're talking about or whether it means admissible evidentiary proof. Do you have a position on that? I think, Your Honor, based on the law, based on Eighth Circuit, Ninth Circuit law, all you have to produce is sufficient material. And that's taken from Blackie versus Barack. Sufficient material, sufficient evidence to establish typicality and the requirements. This is not a trial. This is not a trial on the merits. In fact, we're in the preliminary stages of the litigation to determine. And here's the goal. The goal of class certification is to determine the best method by which to resolve this action, not to try the merits. Otherwise, we will convert, and as the U.S. Supreme Court said in Amgen, otherwise we are going to convert class certification into mini-trials on the merits. So I want to give you some time for rebuttal, but I have another question. Could you address the pay slip issue or the wage stub issue and the commonality there? Yes, Your Honor. So just so that I can address that before. Your Honor, under Wackenhut v. Superior Wackenhut case, an injury under labor code section 226 arises from defects in the wage statements, not from an injury resulting from the claimed inaccuracies from the wage statements. In other words, under Wackenhut, if the wage statement does not contain the information required by the labor code or the information is inaccurate, the wage statement is by itself defective and therefore the employee is deemed to suffer injury. And all the employees are getting the same wage statement format-wise? Correct. Yes. So the common wide proof in this case is UHS, throughout the class period, distributed wage statements to employees that did not contain all of the hours worked because of the non-neutral rounding time policy, the correct regular rate of pay, and the incorrect name of the employer that employed them. That's common wide proof. We presented a common contention capable of class-wide resolution. Did you present some of those wage statements to the district court so we could see that they were all the same? Yes, Your Honor, we did. And I guess in some ways that the defect in the wage statement on the hours worked is derivative of the rounding claim. At least that part of it. Absolutely, Your Honor. Absolutely. Did you want to save some time for rebuttal? Yes, I do. Thank you. Thank you. Good morning, and may it please the Court. My name is Christina Hayes, and I represent the defendants' appellees in this matter. This Court recognizes that the district court's denial of class certification is entitled to broad deference and may only be overturned for an abuse of discretion. Here, that deference requires affirming the district court's opinion on all grounds. In its recent decision, the district court provided three independent and alternative grounds for denying class certification of plaintiff's proposed subclasses. The district court found that plaintiffs fail to carry their burden of establishing typicality under Rule 23A3. Second, and again with respect to all of plaintiffs' proposed subclasses, the district court properly found that plaintiffs fail to carry their burden of establishing adequacy under Rule 23A4. And third, with respect to the proposed wage statement and rounding time classes, the district court additionally denied certification on the independent grounds that plaintiffs fail to carry their burden of establishing predominance under Rule 23B3. Let's go to your typicality argument. Should the court have considered the issue of whether or not inadmissible evidence, that is, does the district court have to consider only admissible evidence to determine typicality? And I would direct this court to what the Supreme Court said, which is that Rule 23 requires a rigorous analysis. And plaintiffs here have proposed that simply the complaint itself was sufficient. But the Supreme Court has made clear that Rule 23 is not a mere pleading standard. The plaintiffs must affirmatively establish each and every requirement of Rule 23A, and that includes the typicality analysis. And I would also point out that here, this wasn't simply an issue of was this hearsay evidence or would it ultimately be inadmissible at trial. The only evidence that was before the district court was the declaration of Plaintiff's Counsel's paralegal, Javier Ruiz. And the district court noted that there were multiple evidentiary issues with this report. It wasn't simply hearsay. There was no way to verify the results. There was no date context. Entire periods and years were missing from these records. The class period went back to 2009. Let me go back to the question, though. Can you cite any specific case in the Ninth Circuit or elsewhere that indicates that we are only to consider, that district courts are only to consider admissible evidence at this stage? Not necessarily only admissible evidence, but as we were just discussing, it must be to evaluate the evidence that was before it, and it did fully evaluate the evidence that was submitted in the Ruiz Declaration. Well, doesn't it sound like the district court was going to only consider admissible evidence and to the exclusion of non-admissible evidence? No, the district court did not phrase it as admissible evidence. The district court fully evaluated the Ruiz Declaration and determined that it simply was not even competent evidence. So this was not evidence that could be relied on to affirmatively establish plaintiff's burden to prove typicality, and that was the only evidence before the district court. There was no sworn testimony from either of the named plaintiffs establishing that their injuries were similar to the rest of the class, and again, that is something that plaintiffs had the burden to prove. They were required to establish that their injuries were typical of the rest of the class, and the district court had no competent evidence, not just admissible evidence. It had no competent evidence before it to prove that basic requirement, and if somebody could come into the court and simply, based on their complaint or completely unreliable evidence, establish typicality, then we're not conducting that rigorous analysis that the Supreme Court requires we do at the Rule 23 stage. Did the district court say that, though, in its order? So in the district court's order, he fully set out, and this is if you look at the record on page 16 and 17 is where the district court discusses the Ruiz Declaration, and he fully evaluates multiple evidentiary deficiencies with the data. One, he was a layperson basically providing expert testimony, and here that's also important because plaintiffs or defendants were denied the opportunity to depose Mr. Ruiz. So basically you have someone, we would for example be able to depose the plaintiff. How were you denied the opportunity to depose him? Did you ask to depose him? We did. We did. And what happened? Plaintiff's counsel refused to provide him for deposition on the ground that it was attorney client and work product privilege. So we were not actually able to depose Mr. Ruiz. So basically How much discovery took place before the class certification motion was filed? Considerable amount of discovery. So the named plaintiffs were both deposed. The Rule 30B6 witnesses were deposed, and following plaintiff's motion, we also deposed several of the class, the putative class members who had submitted declarations. And when you were denied the opportunity to depose, did you then follow up with the district court judge? We did not at that time, and the reason for that was so, you know, obviously you have a very limited amount of time when you are, when you're preparing your opposition to the class certification motion. So plaintiff had objected, they made it very clear that they would not be producing Mr. Ruiz for a deposition. At that point, based on the numerous evidentiary deficiencies that we saw in the Ruiz declaration, we made the decision to strike it on those grounds, including the fact that it was improper opinion testimony, it was unreliable, it was hearsay. There were numerous evidentiary deficiencies. If you look at the charts that were submitted But counsel, isn't that exactly the point here? That we're at such an early stage in the process that extensive discovery hasn't, again, been engaged in by the parties. Opportunities to depose witnesses hasn't been fully gone through. That, I mean, I think district courts would be at a loss if they, wouldn't they be at a loss if they were only to consider admissible evidence at this stage? And again, in this particular case, there had been a 20 percent sampling of all time and payroll records. There had been approximately 10 depositions taken. This was not a case where a plaintiff lacked the deposition testimony from the named plaintiff. He simply chose not to include it. And this is not a case But this, but they were not given the opportunity to include it because, or to submit more evidence or different forms of evidence because this was just decided on the initial papers submitted in chambers by the judge without oral argument. And so, who knew at this stage what exactly the judge was, what level of evidence the judge was going to require? And it doesn't seem that they were given, they have the information. It doesn't seem that they were given the opportunity to provide it just because of how this was decided. Well, certainly they could have provided declarations or deposition testimony with their moving papers on behalf of the named plaintiffs. And again, there's no, it's not as though the requirements of Rule 23.3 are a surprise. I mean, plaintiffs knew The requirements are, what's interesting, actually, to me, is that the requirements are clear. And in my history with class certifications, we never seem to require this level of evidentiary proof. It's almost bordering on a merits determination at this point. And so, and it seems unclear even in our circuit, like what level of evidence, are you going to be trying the case at this point? Or are you supposed to put in just enough to demonstrate the elements of 23 and what level of proof is required? And it seems like it's fairly unsettled. Your Honor, there was no evidence of typicality with his moving papers. Again, he did not present any deposition or declaration testimony from the named plaintiffs, even though he had that evidence. He did not have them even verify the information that Mr. Ruiz was making conclusions about. So there was, Mr. Ruiz had no personal knowledge of any of the violations of plaintiffs, and yet he But why does it matter? I mean, this is a wage and hour claim under California law. It's pretty clear what's required. And just, I mean, for example, the wage statements, they're either in compliance with California law or they're not. And if they're not, that's, that is actionable. Well, and again, Your Honor, but we're talking about a class action, and it's not as though the wage and hour laws are exempt from the requirements under Rule 23. They still must meet those requirements. These are affirmative requirements the plaintiff is established or required to carry his burden of establishing. So this isn't to say that plaintiffs can bring in But you don't dispute, do you, for example, that your client does do this rounding up practice, right? So it rounds up and down. So the, for example, if an employee were to clock in three minutes late, the employee's time would then be rounded down, and the employee would get the benefit of that time, even though they were not clocked in. So it's That's a merits argument. Now you're making a merits argument, because it's the same practice with respect to every single member of the class. Absolutely not, Your Honor. So yes, the practice is the same, but whether or not employees were under the control of their employer, whether or not they were working, and I know there's been a lot of talk about where that actually working language and whether that was appropriate. The reason that is, and you'll notice the District Court put that in quotes, and the reason for that is that is what the federal regulation in the Seize Candy case out of California, that's the language they use, is whether or not the employee was actually working. But they define it as being under the control of the employer. Well, so the District Court actually does use the control standard in two different places, in his opinion. If you look at the excerpts of record at page 7, the District Court notes that punch times are only indicative of time actually worked if RNs are working and under the control of their employer whenever they are punched into work. But while clocking in and clocking out are relevant to and probative of whether an employee is under the employer's control, they are far from dispositive. So the District Court did look at the control issue. Doesn't that go into the merits? No. The District Court found was that you could not make this determination based on common proof. So whether... Why not? Why not? Why not? What is the employer's policy that when... I mean, we haven't gotten to that point, really, in discovery. Once the person clocks in, are they subject to the control of the employer? There was no policy saying that. So and that is why it was necessary to look at each and every individual employee's behavior. See, that's where it seems... If they allege that there's essentially a policy or a practice, then you can get into the factual issues of whether there was or wasn't, and it may be a summary judgment. But it seems to me that if you are under the control of the employer and you clock in early, then you might not be getting paid. On the other hand, if you're not necessarily under the control, then maybe no harm, no foul. Well, and that's the factual issue, though, and that's what precludes class certification. So for example, we have declaration testimony from employees who would park their cars, clock in, get back into their cars, and go into the parking lot and park. They're certainly free to use that time for their own purposes, which is what the standard is for under the employer's control. So that employee is not engaging in compensable activities during that time. Another employee might clock in and immediately begin working, even though their time is being rounded. And that was what the district court noted, is that you have all of these different factual issues. Some employees... Well, it seems to me that begs the whole question of the policy, because if I clock in, I might decide to go to the coffee shop, and somebody else might be just in the break room, and all of a sudden there's an emergency, and everybody kicks in, and now I'm working. Isn't there an overriding question of whether, in fact, you're under the control of the employer and isn't that really a legal question to be resolved, maybe based on undisputed facts? No, Your Honor, because there was no policy preventing employees from using time during the grace period for their own purposes. So we have no common policy. That sort of begs the question of whether you're still under the control. But again, that's an individualized question, because if employees, if some employees are used that time for the purposes of the employer. And it's very clear from the declaration testimony that many employees were not using that time, that they were free to use that time for their own purposes, and did, in fact, use that time for their own purposes, engaged in personal pursuits. And that's what the district court noted. Not that necessarily some employees won't ultimately be found to have engaged in compensable activities, but it's going to be different and it requires an individualized inquiry into each and every employee as to what they were doing, as to whether they were free to use that time for their own purposes. And that's what the district court determined. It did not reach the merits. In fact, it specifically declined to reach the merits and said the issue is not whether this policy is lawful or unlawful, it's whether you can even make that determination based on common proof. For example, time records. Here you can't use the time records because they don't actually show what the employees were doing and whether they were under the employer's control during  But isn't that true? Okay, let's go, I mean, just set aside this little grace period time. The entire day, say the 12-hour shift, I mean, there's no employee that for the entire 12 hours isn't going to be taking some personal time and not actually working the way you're using the term, even though during the 12 hours they're under the control of the employee. Some employees are going to be on their computer ordering personal items or browsing what movies are out, and others are going to be actually in the emergency room. So that whole argument can be said about any period of time, and the fact that you're making that argument as to the grace period doesn't change this from a question of law to a question of fact. Well, Your Honor, though, in this particular case, because rounding is lawful, if it does not ultimately undercompensate the employee, we do have to look at whether the employees were being undercompensated, and the only way to do that is to engage in this individualized inquiry into what those employees were doing, and that's to determine liability, and that's what this whole question is, is can you determine liability based on common proof? And so in this particular case, especially, we don't just have employees sitting at their computers. We have employees who are out in the parking lot, who have left the premises. These are not employees who are subject to the employer's control in those particular instances, and that's the evidence that the district court considered, and that's the evidence that the district court relied on in determining that individualized issues are predominated over common questions. And I know my time is out. We did not get to address adequacy of counsel or Plaintiff Spriggs. If the Court has any questions about that, I'm happy to answer them. I think that's pretty well briefed. Thank you. Okay. Thank you very much. Thank you, Your Honor. What's your response to her claim that there is no policy, so therefore you can't have a uniform determination of when an employee is under the control? Your Honor, that is the defendant's argument is the argument that was raised in Morley-On, and the California Supreme Court utterly rejected that argument, that just because you can engage in personal activities such as reading or listening to music or drinking coffee does not eliminate the type of control that an employer exercise on an employee. That was rejected because control could be exercised in many different ways. For example, in the meal period classes, if the employer has a policy preventing employees from leaving the premises, that's control. So once we get into the merit stage, once we get into the merit stage, right now what we've established is a common contention-capable classified resolution. The defendant has a policy, a practice, that undercompensates its employees to its rounding time practice. Now we can go into the merits and determine whether or not that employer exercised sufficient control to deem that time compensable. And this is nothing new. Our circuit in Jimenez confirmed that representative evidence can be used to establish liability and damages. Look at Tyson Foods, where the U.S. Supreme Court confirmed a $2.9 million verdict on a donning and doffing off case through statistical sampling from an expert. This can be done. And so, Your Honor, just to close. Well, let me ask one last question about your paralegal's excursion into the data. If you say that the paralegal can't be deposed because you have attorney-client and yet you're relying on that data as representative of the class, I'm seeing some collision in that position on your part. No, Your Honor, we thought it was unnecessary. When we... Well, if we thought it was unnecessary, that's a different objection than we're taking the view of the attorney-client privilege, isn't it? Well, Your Honor, that was one of the objections that we presented. But the main objection that we presented is that we not only, in establishing typicality, not only did we produce the complaint, we also produced that Excel spreadsheet that my paralegal prepared, showing the difference between the actual time and the rounding time. Basic math. The court ruled that it was hearsay, and not only hearsay, but constituted expert testimony. And our subtracting actual time versus rounding time to determine whether or not they were harmed by the rounding time practice requires expert analysis. So you're saying that they only added and subtracted, they didn't manipulate the data in any other way? Exactly. Is that what happened? That is exactly it. It's just basic math. Math that my 11-year-old could do. Actual... Maybe you should have offered up your 11-year-old, then you wouldn't have an attorney-client problem. I think I can qualify her as an expert. All right. Thank you. Thank both counsel for your argument this morning. The case just argued of Solly and Spriggs v. Corona Regional Medical is submitted.
judges: McKeown, Wardlaw, Mendoza